| | |
|---|---|
| AHMED OLASUNKANMI SALAU, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CLARK LAFFERTY JONES and )<br>JONES, SCHNEIDER & STEVENS, )<br>)<br>Defendants. ) | Case No. 2:14-cv-04307-NKL |

**ORDER**

Plaintiff Ahmed O. Salau brings this pro se action against Defendant Clark Lafferty Jones and Defendant Jones, Schneider & Stevens, LLC. Before the Court is the Defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6). [Doc. 35.] For the following reasons, the motion to dismiss is granted.

**I.   Background[1]**

In the fall of 2012, Plaintiff Ahmed Salau, a resident of West Virginia, was a student at the University of Missouri in Columbia, Missouri. He also worked for the University of Missouri Campus Dining Services. At that time, Salau had a domestic violence matter pending in Missouri State Court and a student conduct violation pending at the University of Missouri. Both stemmed from Salau's relationship with Hannah Brackett.

---

[1] These facts appear in Salau's Amended Complaint. [Doc. 33.] For purposes of deciding Jones' motion to dismiss, the Court accepts Salau's factual allegations as true and construes them in the light most favorable to Salau. *See Stodghill v. Wellston Sch. Dist.,* 512F.3d 472, 476 (8th Cir. 2008).

Salau hired Defendant Clark Lafferty Jones to represent him in the domestic violence and student conduct proceedings. Mr. Jones is employed by a law firm in Columbia, Defendant Jones, Schneider & Stevens, LLC. According to Salau's Complaint, he hired Jones on October 1, 2012, paid $500 to retain Jones' legal services, and provided Jones documents regarding a State Court hearing on October 3. Jones told Salau he would attend the hearing and request a continuance. Salau alleges Jones did not attend. As a result, a "fraudulently obtained" domestic violence protective order went into effect against Salau. [Doc. 33, p. 5, ¶ 8.] Salau was terminated from his position with Campus Dining Services two days later, on October 5. He was later expelled from the University.

On October 9, Jones, acting as Salau's attorney, filed a motion for a new trial in the domestic violence case, which was thereafter set for hearing on November 28. Jones advised Salau to deny the allegations at the hearing but consent to the protective order. Salau followed this "erroneous and negligent advice" and consented to the order. [Doc. 33, p. 7, ¶ 19.] The order expired on November 22, 2013. Throughout the interim period during which the order was effective, Salau "experienced a loss of multiple constitutionally guaranteed rights." [Doc. 33, p. 7, ¶ 23.] Had Jones not instructed Salau to consent to the order, moreover, Salau would have been able to obtain documents, cross-examine his accuser in the domestic violence matter, and "expose the improper and fraudulent nature" of the domestic violence charge. [Doc. 33, p. 7, ¶ 22.]

Meanwhile, Jones also represented Salau in his student conduct hearing before the University of Missouri Office of Student Conduct. Salau and Jones met with an official from the Office of Student Conduct, Donell Young, on October 9, 2012. Salau and Jones requested from Young a formal hearing, which was scheduled for November 12. According to Salau's

Complaint, Salau instructed Jones to request a continuance before the hearing, but he did not do so. Salau requested the continuance instead and succeeded in postponing the hearing until November 28. In the weeks between November 12 and November 28, Salau alleges Jones failed to diligently pursue the case. After the University denied requests for surveillance footage and witness contacts regarding the domestic violence incident, Jones did not actively seek to compel production of these records. Jones also informed Salau that Salau could not obtain relief in the student conduct proceeding for any domestic violence order entered by the Boone County Circuit Court.

As the November 28 hearing approached, Salau asked Jones to obtain a second continuance of the student conduct hearing. Jones, in turn, informed Salau on November 26 that his firm needed a $1,500 retainer before it would represent Salau at the hearing. Salau and Jones then reached an agreement: Jones would continue representing Salau until he obtained a continuance; should he fail to secure one, Salau would terminate Jones' services.

On November 28, when Salau could not reach Jones by phone or email, he sent Jones a text message terminating Jones' legal services. Salau went to the student conduct hearing and saw Jones, who was "improperly representing himself" as Salau's attorney. [Doc. 33, p. 11, ¶ 54.] Salau reiterated to Jones that Jones' services were terminated, at which point Jones informed the student conduct committee he had been fired, thus "abandon[ing] Salau at his hour of need." [Doc. 33, p. 12, ¶ 55.] Because the committee believed Salau fired Jones in order to postpone the hearing, it proceeded to hold the hearing even though Salau was not prepared and lacked an attorney to protect his constitutional rights.

Salau seeks consequential and punitive damages. His Complaint asserts the following claims:

       I.      Breach of Fiduciary Duty
      II.     Legal Malpractice
     III.    Outrage
     IV.    Negligent Representation
     V.     Breach of Contract
     VI.    Intentional Infliction of Emotional Distress
     VII.   Conspiracy
     VIII.  Intentional Misrepresentation
     IX.    Respondeat Superior
     X.     State Law Claims

**II.**   **Discussion**

Jones argues dismissal is warranted under Fed.R.Civ.P. 12(b)(6) because Salau fails to state claims upon which relief can be granted.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when its allegations rise above the "speculative" or "conceivable," *Twombly*, 550 U.S. at 547, and "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. Such a complaint will be liberally construed in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). While this pleading standard does not require "detailed factual allegations," *Twombly*, 550 U.S. at 555, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678.

Dismissal under Rule 12(b)(6) is therefore appropriate when a complaint fails to allege facts establishing each element of its claims. *Id*. at 678–80; *Twombly*, 550 U.S. at 555–56. A pleading that offers labels, bare assertions, and "[t]hreadbare recitals of the elements of a cause

4

of action, supported by mere conclusory statements," is insufficient to avoid dismissal. *Iqbal*, 556 U.S. at 678.

### A. Salau's Amended Complaint

As an initial matter, the Parties disagree which complaint—and therefore which factual allegations—should control here. In Salau's Suggestions in Opposition [Doc. 57], he cites solely to his "Third Amended Complaint." Jones argues that "Salau's Motion for Leave to File his Third Amended Complaint was denied" by the Court, and therefore "it would be improper for this Court to consider any allegations as set forth" therein. [Doc. 59, p. 1, ¶ 1.] Salau conversely maintains that the Court should consider his Third Amended Complaint because new information came to his attention and "[l]eave to amend should be freely given in the interest of Justice where as here the Defendants' conduct is [] egregious and shameful." [Doc. 57, p. 4.]

Under the Federal Rule of Civil Procedure 15(a)(2), once a responsive pleading is filed and served, a party may amend his pleading only by leave of court or by written consent of the adverse party. No leave has been granted in this case. On July 9, 2015, the Court denied Salau's request to amend his First Amended Complaint, noting that "no further amendments to the [First] Amended Complaint will be granted." [Doc. 48.]

Moreover, pursuant to the Court's Scheduling Order [Doc. 20], the Parties had a deadline of April 24, 2015 to file a motion to amend pleadings, and Salau's Motion for Leave to File a Third Amended Complaint [Doc. 46] was not filed until June 29. Scheduling orders should not be modified absent a showing of "good cause," Fed.R.Civ.P. 16(b)(4), which Salau fails to demonstrate. *See Olson v. Desserts on the Blvd., LLC*, 2013 WL 5446922, at *2 (E.D. Mo. Sept. 30, 2013) ("In most instances where a party seeks leave to amend his complaint after the deadline in the applicable case management order has passed . . . Federal Rule of Civil Procedure

5

16(b)'s good-cause standard applies.") (*citing Sherman v.Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008)). Salau's pro se representation does not excuse him from complying with court orders or the Federal Rules of Civil Procedure. *Garth v. White*, 2007 WL 2128361, at *1 (E.D. Mo. July 23, 2007) (*citing Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir. 1996)).

Salau, therefore, has not filed a Third Amended Complaint and cannot cite to that document.

While Salau correctly notes that courts will freely grant leave to amend a complaint "when justice so requires," Fed.R.Civ.P. 15(a)(2), this liberal allowance is not a mandatory right. On the contrary, courts possess wide discretion to grant or deny such motions once a responsive pleading has been filed. *Houck by Houck v. Morrow*, 786 S.W.2d 604, 607 (Mo. Ct. App. 1990) ("The decision of whether to give leave to amend a pleading is a matter discretionary to the trial court. That discretion is wide.") (internal citations omitted).

The case's procedural history supports the Court's exercise of its discretion to deny Salau's motion. Salau first moved to amend his original Complaint [Doc. 5] on March 3, 2015, after Jones filed a Motion to Dismiss [Doc. 7], citing Salau's failure to state facts necessary for his claim. The Court granted Salau's motion. Salau then filed a First Amended Complaint [Doc. 33] and Jones again filed a Motion to Dismiss [Doc. 35], again citing Salau's failure to state facts necessary for his claim. Now Salau seeks to amend his complaint a second time. The Court has examined Salau's proposed "Third Amended Complaint" [Doc. 46-1] and finds that it lacks new factual allegations; instead it offers rote, conclusory assertions along with one added claim, "Tortious Interference with Business or Contractual Relationships," which merely restates the conclusory language used elsewhere in the document. The Third Amended Complaint would

6

therefore be futile and justice does not require its filing. *See Becker v. Univ. of Nebraska at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999) (the "futility of the amendment" is a "good reason for denial" of a motion to amend) (*quoting Brown v. Wallace*, 957 F.2d 564, 566 (8th Cir. 1992)).

Accordingly, the Court again denies Salau's request to file his "Third Amended Complaint." For the purpose of this Motion to Dismiss, only claims and facts alleged in the First Amended Complaint [Doc. 33] will be considered.

### B. Count I, Breach of Fiduciary Duty

Under Missouri law, a plaintiff claiming breach of fiduciary duty must show: "1) the existence of a fiduciary relationship between the parties, 2) a breach of that fiduciary duty, 3) causation, and 4) harm." *Robert T. McLean Irrevocable Trust v. Patrick Davis, P.C.*, 283 S.W.3d 786, 792-93 (Mo. Ct. App. 2009) (*citing Koger v. Hartford Life Ins. Co.,* 28 S.W.3d 405, 411 (Mo. Ct. App. 2000)). In an attorney-client context, the plaintiff satisfies the second element—breach of fiduciary duty—when he shows that the attorney violated the duty of client loyalty or the duty of confidentiality. *Costa v. Allen*, 274 S.W.3d 461, 462 (Mo. 2008) ("An attorney's fiduciary duties equate specifically to client loyalty and confidentiality."). An attorney breaches the duty of loyalty when he "plac[es] the interests of other clients before [those of the plaintiff]." *Klemme v. Best*, 941 S.W.2d 493, 496 (Mo. 1997). He breaches the duty of confidentiality when he fails "to maintain the attorney-client privilege." *Neal v. State*, 379 S.W.3d 209, 220 (Mo. Ct. App. 2012).

In *Costa*, the plaintiff's pleading claimed that his attorney failed to call witnesses at a post-conviction evidentiary hearing, but it alleged neither breach of client confidences nor lack of client loyalty. *Costa*, 274 S.W.3d at 463. The court held that the plaintiff failed to state a claim for breach of fiduciary duty. Here as well, Salau alleges that Jones "failed to fully

7

investigate" his case, "ignored the adverse effect that a fraudulently obtained Domestic Violence Protection Order would have on the Student Conduct Proceedings," "failed to make timely requests for evidence," and "misrepresent[ed] himself as [Salau's] counsel" at the student conduct proceeding on November 28. [Doc. 33, p. 13-14, ¶ 60.] Nowhere in his Complaint does Salau claim Jones violated a duty of loyalty or confidentiality. While the facts, as Salau alleges them, may suggest deficiencies in Jones' representation, they do not indicate that Jones revealed privileged information or placed other interests ahead of Salau's.

Consequently, Salau has failed to plead the essential elements of his claim for breach of fiduciary duty. Count I is DISMISSED with prejudice.

### C. Count II, Malpractice; Count V, Breach of Contract

Jones urges the Court to dismiss Salau's malpractice claim, arguing that Salau has not shown "that the underlying claim would have been successful except for the negligence of the defendant-attorney." [Doc. 36, p. 7] (*citing Nail v. Husch Blackwell Sanders, LLP*, 2014 WL 2866324 (Mo. 2014)). Jones similarly asks the Court to dismiss Salau's claim for breach of contract because, even assuming the existence of a contract between the Parties, Salau "has not pled anything (much less facts) alleging the outcome of the student conduct proceeding would have been any different but for the alleged wrongdoing on the part of [Jones]." [Doc. 36, p. 12.] Because both claims turn on this question—whether Salau has offered facts demonstrating he would have otherwise prevailed in the underlying legal matter—the Court will address them together.

In Missouri, a plaintiff who alleges legal malpractice must plead (1) the existence of an attorney-client relationship, (2) negligence by the attorney, (3) that the attorney's actions were the proximate cause of plaintiff's damages, and (4) that the plaintiff would have prevailed in his

8

underlying cause of action but for the attorney's misconduct. *Boatwright v. Shaw*, 804 S.W.2d 795, 796 (Mo. Ct. App. 1990). In order to satisfy the fourth element, a plaintiff must plead facts that, if proven, demonstrate "he would have been successful in prosecuting his [underlying] claim" but for his attorney's action or inaction. *Pool v. Burlison*, 736 S.W.2d 485, 486 (Mo. Ct. App. 1987). *See also State ex rel. Selimanovic v. Dierker*, 246 S.W.3d 931, 933 (Mo. 2008) (plaintiffs must show that "but for this negligence, Plaintiffs would have prevailed on their cause of action").

Salau makes vague assertions that Jones' actions "undermine[d] and ultimately defeat[ed] Salau's cause." [Doc. 33, p. 8-9, ¶ 33.] He elsewhere attacks the domestic violence protective order as "improper and fraudulent [in] nature." [Doc. 33, p. 7, ¶ 22.] Yet nowhere does Salau allege facts suggesting he could have reached a more favorable result in the protective order hearing or the student conduct proceeding—or that he *would* have achieved such a result, but for Jones' conduct. Rather, Salau's conclusory statements are the sort of "formulaic recitation[s]" and "naked assertion[s]" that were disfavored in *Twombly*. *Twombly*, 550 U.S. at 555, 557. Jones also raised this issue in his first Motion to Dismiss [Doc. 8], and Salau has since had the opportunity to augment his First Amended Complaint with sufficient facts. That he has failed to do so indicates Salau's inability to maintain a claim for malpractice.

For the same reason, Salau's claim for breach of contract must also fail. Under Missouri law, a breach of contract claim between an attorney and her client is treated similarly to a claim of legal malpractice. In both cases, a plaintiff must show the existence of an attorney-client relationship, that the attorney's conduct proximately caused the plaintiff damage, and that "but for the attorney's conduct, the plaintiff would have been successful in the prosecution of the underlying claim." *O'Neal v. Agee*, 8 S.W.3d 238, 241 n.3 (Mo. Ct. App. 1999) (*citing*

9

*McDowell v. Waldron*, 920 S.W.2d 555, 559 (Mo. Ct. App. 1996)).

Again, Salau has not alleged he would have succeeded in the underlying proceeding. Count II (Legal Malpractice) and Count V (Breach of Contract) are DISMISSED with prejudice.

### D. Count III, Outrage; Count VI, Intentional Infliction of Emotional Distress

Salau asserts separate claims for Outrage (Count III) and Intentional Infliction of Emotional Distress (IIED) (Count VI). In his Motion to Dismiss, Jones addresses the two claims simultaneously, because the "tort of outrage is [the same as] intentional infliction of emotional distress" under Missouri law. [Doc. 36, p. 11.] *See Hampton v. Carter Enterprises, Inc.*, 238 S.W.3d 170, 172 n.1 (Mo. Ct. App. 2007) ("[Plaintiffs] denominated their cause of action as the "tort of outrage," but the proper name for the tort is intentional infliction of emotional distress.").

To establish a prima facie case of intentional infliction of emotional distress, a plaintiff must show that "(1) defendant's conduct was extreme and outrageous, (2) defendant acted in an intentional or reckless manner, and (3) such conduct resulted in severe emotional distress." *Comstock v. Consumers Markets, Inc.*, 953 F. Supp. 1096, 1104 (W.D. Mo. 1996). To satisfy the third element, the plaintiff must suffer distress that is "medically diagnosable and . . . of sufficient severity so as to be medically significant." *Bass v. Nooney Co.*, 646 S.W.2d 765, 772 (Mo. banc 1983). Examples of severe, medically diagnosable harm include "weight loss, nausea, vomiting, chest pains, headaches, and insomnia." *Polk v. INROADS/St. Louis, Inc.*, 951 S.W.2d 646, 648 (Mo. Ct. App. 1997).

In his Complaint, Salau alleges he has suffered "an extreme amount of emotional distress," [Doc. 33, p. 27, ¶ 76], but fails to describe this distress in any detail and, crucially, does not demonstrate that his emotional distress is medically diagnosable or significant. Salau merely states that he has suffered a "stigma" and "lost [his] good name." [Id., p. 26, ¶ 76.] Yet

10

claiming a tarnished reputation is insufficient to recover for IIED. *See Hendrix v. Wainwright Industries*, 755 S.W.2d 411, 412 (Mo. Ct. App. 1988) (plaintiff who merely pled that he had suffered indignities, humiliation, and disgrace failed to state a cause of action for IIED).

Salau has failed to state a claim for relief on the basis of intentional infliction of emotional distress. Count III (Outrage) and Count VI (Intentional Infliction of Emotional Distress) are DISMISSED with prejudice.

### E.  Count IV, Negligent Representation; Count VIII, Intentional Misrepresentation

Jones argues that Salau's misrepresentation claims must be dismissed because they "fail to meet the standard for pleading articulated in [*Iqbal*]," [Doc. 36, p. 14], and because the negligent representation claim is effectively a legal malpractice claim. The Court agrees that Salau couches his negligent representation argument in malpractice terms, repeating the exact factual allegations he recites in Count II (Legal Malpractice). The Court further notes that Salau's intentional misrepresentation claim does not state a cause of action; Salau merely states that Jones "had a legal obligation NOT to misrepresent [himself] as Salau's attorney[]." [Doc. 33, p. 30, ¶ 81.] In his Suggestions in Opposition [Doc. 57] Salau does not even mention this intentional misrepresentation claim.

Nevertheless, the Court will consider Count IV (Negligent Representation) and Count VIII (Intentional Misrepresentation) as standalone misrepresentation claims for the purpose of Jones' Motion to Dismiss. Under Missouri law, a plaintiff alleging negligent misrepresentation must show:

> (1) that speaker supplied information in the course of his business or because of some other pecuniary interest; (2) that, due to speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) that speaker intentionally provided the information for the guidance of a limited group of persons in a particular business

11

> transaction; (4) that listener justifiably relied on the information and (5) that as a result of listener's reliance on the statement, he/she suffered a pecuniary loss.

*Colgan v. Washington Realty Co.*, 879 S.W.2d 686 (Mo. Ct. App. 1994) (citations omitted).

Similarly, to maintain a claim for intentional misrepresentation, a plaintiff must establish that:

> the defendant made a material false representation, while either knowing that the information was false or being ignorant of its truth, and intending for the plaintiff to act upon the representation in a manner reasonably contemplated. The plaintiff must also establish that he or she was ignorant of the representation's falsity and that he or she reasonably relied on the representation as being true and that this reliance was a proximate cause of his or her injury.

*Fields v. Mitch Crawford's Holiday Motors Co.*, 908 S.W.2d 877, 879 (Mo. Ct. App. 1995) (internal citations omitted).

Both causes of action therefore share several elements—the plaintiff relied on the representation, was justified in doing so, and suffered injury as a result—that Salau does not plead in his Complaint. Salau never claims he was misled by Jones' false representation that Jones was still serving as his attorney. Instead, according to Salau, he confronted Jones outside the student conduct hearing, at which point Jones informed the committee he had been fired. Salau therefore never alleges he relied on Jones' misrepresentation, was justified in doing so, or suffered injury as a result.

Salau also challenges several representations allegedly made by Jones while he still served as Salau's attorney. For example, Salau alleges Jones "erroneous[ly] and negligent[ly]" advised him to consent to the domestic violence protective order. [Doc. 33, p. 7, ¶ 19.] Salau also claims that Jones "incorrectly inform[ed him] that no relief was possible in the student

12

conduct proceedings from the Circuit Court of Boone County, Missouri." [Id., p. 9, ¶ 38.]  For neither of these alleged representations, however, does Salau offer more than perfunctory, conclusory language to demonstrate the falsity of Jones' statement.  Salau's claims for intentional and negligent misrepresentation must therefore fail.

Consequently, Count IV (Negligent Misrepresentation) and Count VIII (Intentional Misrepresentation) are DISMISSED with prejudice.

### F.  Count VII, Conspiracy

Salau's Complaint alleges that a conspiracy existed between Jones and his employer, Jones, Schneider & Stevens, because the two parties "conspired to breach their fiduciary duty, conspired to commit legal malpractice, conspired to commit outrage, conspired to commit negligent representation, conspired to breach their contract, [and] conspired to intentionally inflict emotional distress on and against [] Salau." [Doc. 33, p. 28, ¶ 79.]  Jones responds that Salau has not stated a claim for civil conspiracy because he has not alleged there was a "meeting of the minds" among the conspirators. [Doc. 36, p. 13.]

A civil conspiracy is "an agreement or understanding between two persons to do an unlawful act, or to use unlawful means to do an act which is lawful." *Ritterbusch v. Holt*, 789 S.W.2d 491, 494 (Mo. 1990).  Under Missouri law, a conspiracy exists when "two or more persons with an unlawful objective, after a meeting of the minds, committed at least one act in furtherance of the conspiracy, damaging the plaintiff." *Gibson v. Brewer*, 952 S.W.2d 239, 245 (Mo. banc 1997) (*citing Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. banc 1996)).  Whether defendants exhibit a meeting of the minds is conditioned on their "know[ledge]" of the agreement or understanding.  *See Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 782 (Mo. banc 1999).  A conspiracy, furthermore, is not independently actionable unless "something is

13

done pursuant to which, absent the conspiracy, would create a right of action against one of the defendants, if sued alone." *Gettings v. Farr*, 41 S.W.3d 539, 542 (Mo. Ct. App. 2001) (citations omitted).

Even assuming Salau has properly alleged the torts that underlie his conspiracy claim, which he has not, he cannot maintain a claim for conspiracy. Salau does not allege in his Complaint that the Defendants made a conscious agreement or shared an understanding to commit torts against him—a "meeting of the minds." Instead, Salau simply states that the Defendants "conspired to [commit torts]" as proof that they conspired to commit torts. *See* [Doc. 33, p. 28, ¶ 79.] These are "mere conclusory statements" that do not suffice to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Count VII (Conspiracy) is therefore DISMISSED with prejudice.

### G. Other Claims

Salau's Complaint sets forward two remaining claims: Count IX (Respondeat Superior) and Count X (State Law Claims). Jones urges the Court to dismiss Salau's Complaint in its entirety, these claims included, because they are "hopelessly conclusory" and do not set forth legal grounds for relief. [Doc. 36, p. 14.]

Respondeat superior is a legal doctrine, not a cause of action. Because Salau cannot maintain any of his claims against Jones, as discussed above, he plainly cannot maintain a derivative claim against Jones, Schneider & Stevens under the doctrine of respondeat superior.

Similarly, Count X (State Law Claims) simply restates Salau's other claims, all conditioned on Missouri law, that are plead elsewhere in the Amended Complaint. Salau's other allegations cannot survive a motion to dismiss therefore, the state law claims he reiterates in Count X also fail.

Count IX (Respondeat Superior) and Count X (State Law Claims) are DISMISSED with prejudice.

### III.     Conclusion

For the foregoing reasons, Defendants Jones and Jones, Schneider & Stevens, LLC's Motion to Dismiss [Doc. 35] is hereby GRANTED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: October 13, 2015
Jefferson City, Missouri